IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

PATRICIA G. BOWLIN,                                    Case No. 6:15-cv-01454-PK

        Plaintiff,                            FINDINGS AND RECOMMENDATION

    v.

CAROLYN W. COLVIN,
Acting Commissioner of Social
Security,

        Defendant.

_____

PAPAK, Magistrate Judge:

    Patricia G. Bowlin ("Plaintiff") seeks judicial review of the Commissioner of Social

Security's ("Commissioner") decision denying her application for supplemental security income

("SSI") under Title XVI of the Social Security Act ("the Act"). This Court has jurisdiction over

Plaintiff's action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

    Plaintiff assigns the following errors to the decision of the Administrative Law Judge

("ALJ"): (1) the ALJ failed to fully develop the record, which resulted in an incomplete and

flawed sequential analysis and residual function capacity determination; (2) the ALJ failed to

find depression and fibromyalgia to be "severe" impairments at step two; (3) the ALJ failed to

provide specific, clear and convincing reasons to discredit her testimony; and (4) the

Commissioner failed to meet her burden at step five of her analysis.

    I have considered the parties' briefs and all of the evidence in the administrative record.

For the reasons set forth below, the Commissioner's final decision should be AFFIRMED.

1 – FINDINGS AND RECOMMENDATION

## PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for SSI on September 14, 2011, alleging disability beginning January 1, 2006. Tr. 23[1]. Following a denial of benefits, Plaintiff requested a hearing before an ALJ.  On December 2, 2013, ALJ John Michaelsen held a hearing. Plaintiff was unrepresented by counsel and testified, as did Vocational Expert ("VE") Mark Mann. On December 16, 2013, the ALJ issued a decision finding Plaintiff not disabled within the meaning of the Act. Tr. 32. The Appeals Council denied review on June 1, 2015, and this action followed. Tr. 1.

## DISABILITY ANALYSIS

To establish disability within the meaning of the Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner has established a five-step sequential process for determining whether a claimant has made the requisite demonstration. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); *see also* 20 C.F.R. § 404.1520(a)(4). At the first four steps of the process, the burden of proof is on the claimant; only at the fifth and final step does the burden of proof shift to the Commissioner. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ considers the claimant's work activity, if any. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. § 416.920(a)(4)(i). If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant will be found not disabled. *See Bowen,* 482 U.S. at

---

[1] Citations to "Tr." Refer to the page(s) indicated in the official transcript of the Administrative Record filed herein as Docket No. 10.

140; *see also* 20 C.F.R. §§ 416.920(a)(4)(i), 416.920(b). Otherwise, the evaluation will proceed to the second step.

At the second step, the ALJ considers the medical severity of the claimant's impairments. *See Bowen,* 482 U.S. at 140-141; *see also* 20 C.F.R. *§* 404.1520(a)(4)(ii). An impairment is "severe" if it significantly limits the claimant's ability to perform basic work activities and is expected to persist for a period of twelve months or longer. *See Bowen,* 482 U.S. at 141; *see also* 20 C.F.R. *§* 404.1520(c). The ability to perform basic work activities is defined as possessing "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.152l(b); *see also Bowen,* 482 U.S. at 141. If the ALJ finds that the claimant's impairments are not severe or do not meet the duration requirement, the claimant will be found not disabled. *See Bowen,* 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c). Nevertheless, it is well established that "the step-two inquiry is a *de minimis* screening device to dispose of groundless claims." *Smolen v. Chater,* 80 F.3d 1273, 1290 (9th Cir. 1996), *citing Bowen,* 482 U.S. at 153-154. "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect' on an individual[']s ability to work." *Id., quoting* S.S.R. 85-28, 1985 SSR LEXIS 19 (1985).

If the claimant's impairments are severe, the evaluation will proceed to the third step, at which the ALJ determines whether the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Bowen,* 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d). If the claimant's impairments are equivalent to one of the impairments enumerated in 20 C.F.R. § 404, subpt. P, app. 1, the claimant will conclusively be found disabled. *See Bowen,* 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d).

If the claimant's impairments are not equivalent to one of the enumerated impairments, between the third and the fourth steps the ALJ is required to assess the claimant's residual functional capacity ("RFC"), based on all the relevant medical and other evidence in the claimant's case record. *See* 20 C.F.R. § 404.1520(e). The RFC is an estimate of the claimant's capacity to perform sustained, work-related physical and/or mental activities on a regular and continuing basis,[2] despite the limitations imposed by the claimant's impairments. *See* 20 C.F.R. § 404.1545(a); *see also* S.S.R. No. 96-8p, 1996 SSR LEXIS 5 (July 2, 1996).

At the fourth step of the evaluation process, the ALJ considers the RFC in relation to the claimant's past relevant work. *See Bowen,* 482 U.S. at 141; *see also* 20 C.F.R. § 416.920(a)(4)(iv). If, in light of the claimant's RFC, the ALJ determines that the claimant can still perform his or her past relevant work, the claimant will be found not disabled. *See Bowen,* 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(a)(4)(iv), 404.1520(f). In the event the claimant is no longer capable of performing his or her past relevant work, the evaluation will proceed to the fifth and final step, at which the burden of proof shifts, for the first time, to the Commissioner.

At the fifth step of the evaluation process, the ALJ considers the RFC in relation to the claimant's age, education, and work experience to determine whether a person with those characteristics and RFC could perform any jobs that exist in significant numbers in the national economy. *See Bowen,* 482 U.S. at 142; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560( c), 404.1566. If the Commissioner meets her burden to demonstrate the existence in significant numbers in the national economy of jobs capable of being performed by a person with the RFC assessed by the ALJ between the third and fourth steps of the five-step process, the

---

[2] "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." S.S.R. No. 96-8p, 1996 SSR Lexis 5 (July 2, 1996).

claimant is found not to be disabled. *See Bowen,* 482 U.S. at 142; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404,1520(g), 404.1560(c), 404.1566. A claimant will be found entitled to benefits if the Commissioner fails to meet that burden at the fifth step. *See Bowen,* 482 U.S. at 142; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g).

## LEGAL STANDARD

A reviewing court must affirm an Administrative Law Judge's decision if the ALJ applied proper legal standards and his or her findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035 (9th Cir. 2007) (*citing Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 882 (9th Cir. 2006)).

The court must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id. (quoting Reddick v. Chater,* 157 F.3d 715, 720 (9th Cir. 1998)). The court may not substitute its judgment for that of the Commissioner. *See id. (citing Robbins,* 466 F.3d at 882); *see also Edlund v. Massanari,* 253 F.3d 1152, 1156 (9th Cir. 2001). Moreover, the court may not rely upon its own independent findings of fact in determining whether the ALJ's findings are supported by substantial evidence of record. *See Connett v. Barnhart,* 340 F.3d 871, 874 (9th Cir. 2003) (*citing SEC v. Chenery Corp.,* 332 U.S. 194, 196 (1947)). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). If the ALJ's interpretation of the evidence is rational, it is immaterial that the evidence may be

"susceptible [of] more than one rational interpretation." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*citing Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984)).

When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion. *Batson*, 359 F.3d at 1198, *citing Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). A reviewing court, however, "cannot affirm the Commissioner's decision on a ground that the Administration did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## SUMMARY OF ADMINISTRATIVE RECORD

Plaintiff was 39 years old on her alleged onset date of January 1, 2006. Tr. 23. She completed the seventh grade. Tr. 56. Prior to her claimed disability onset date, Plaintiff worked as a short-order cook from 1987 to 2002, and a waitress from 2004 to 2006. Tr. 57, 216, 217, 218. Plaintiff alleges that she is unable to work due to "knee joint pain, prolapsed vagina, depression, and degenerative disc disease." Tr. 174. Plaintiff also cites tuberculosis, panic attacks, irritable bowel syndrome ("IBS"), diabetes, carpal tunnel syndrome ("CTS"), Hepatitis C, chronic back pain, fibromyalgia, abdominal pain, post-traumatic stress disorder ("PTSD") and anxiety as additional aggravating conditions. Tr. 25, 48, 54, 185, 201.

### I. Hearing Testimony

On December 2, 2013, a hearing was conducted before an ALJ regarding Plaintiff's application for SSI. Tr. 39-58. Plaintiff and a Vocational Expert were present. Tr. 39. Plaintiff was unrepresented by counsel. *Id.*

Plaintiff testified that she was 47 years old. Plaintiff does not have a valid driver's license and was driven to the hearing by her sister, making no stops during their hour long drive. Tr. 47-48. Plaintiff last worked in January of 2006, citing knee pain, Hepatitis C, and degenerative bone disease as reasons she was unable to continue working. *Id*. Plaintiff also cited fibromyalgia as affecting her ability to function, stating that the slightest of touches causes her pain and that she is unable to sit or stand. Tr. 49. Plaintiff experienced liver pain related to her Hepatitis. Tr. 49. Additionally, Plaintiff stated that her stomach hurts no matter what she eats or drinks due to her IBS, which "she would not wish on anyone." *Id*.

Since 2006, Plaintiff has held four different jobs. Tr. 160-61. Plaintiff was employed as recently as 2011 by Superior Staffing, a temporary staffing agency. Tr. 160. Plaintiff stated that she quit those jobs due to back pain and because they required too much lifting. Tr. 49. Although Plaintiff continued to look for work after 2011, she received no calls regarding employment. Tr. 50.

Plaintiff stated she received injections for her knee and hip pain, though they did not help. *Id*. Plaintiff also takes Percocet, which relieves her pain "a little" if she takes two pills—but not much. *Id*. Plaintiff stated that she was unable to stand for more than one minute or two without needing to sit. Tr. 51. Plaintiff stated that she was able to walk to and from the grocery store, which is located one block from her home, before needing to rest. Id. Plaintiff specified that she uses an electric cart while shopping. *Id*. Plaintiff indicated difficulty with sitting for long periods, stating that she can remain seated only for about ten minutes at a time. *Id*. Plaintiff stated that she was unable to lift or carry more than five pounds. *Id*.

Plaintiff stated that she lives alone and she has a hard time cleaning because she is unable to bend over or be on her hands and knees. Tr. 51-52. Plaintiff also stated that she has a medical

companion cat. *Id.* When asked if she was able to prepare her own meals, Plaintiff stated that she hardly ever eats. *Id.* Plaintiff testified that her daughter, who lives nearby, does her laundry. *Id.*

Plaintiff stated that when she needs to go somewhere, she gets rides from others. *Id.* During the day, Plaintiff reads frequently on her Kindle, and reports that she does not really watch television or go out, and does not have internet access. *Id.* Plaintiff stated that she used to ride her bike all the time, but that she is not able to any longer. *Id.* Plaintiff stated that she used to live in a homeless shelter, where she also did volunteer work, but she stopped volunteering at the shelter almost two years ago. *Id.* Plaintiff stated that she has frequent panic attacks, which she gets one to three times a day. *Id.* When asked how long her panic attacks normally last, she replied, "until I take my Lorazepam. It just calms me down. I took one before I got here." *Id.*

### ALJ FINDINGS

At the first stop of the five-step sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 14, 2011, the application date. Tr. 25. Although Plaintiff worked after the application date, the duration of her employment and earnings were not sufficient to constitute substantial gainful employment for purposes of the Act, and were instead considered an unsuccessful work attempt. Tr. 25.

At the second step, the ALJ found that Plaintiff had the following severe impairments: obesity, degenerative joint disease/osteoarthritis of the knees, post-traumatic stress disorder, and right rotator cuff syndrome. Tr. 25. The ALJ also indicated the RFC accommodated a 2013 fibromyalgia diagnosis, although he did not find it "severe." Tr. 26.

At the third step, the ALJ concluded that Plaintiff's impairments did not meet or equal the criteria for any condition in the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Id.*

The ALJ found that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §
416.967(b), except:

> [Plaintiff] is further limited to no more than frequent crawling, kneeling,
> crouching, and climbing, and to no more than occasional overhead reaching on
> the right. [Plaintiff] is also limited to simple, repetitive, routine tasks.

Tr. 27. At the fourth step, the ALJ concluded that Plaintiff was unable to perform any past
relevant work. Tr. 31. At step five, the ALJ found jobs exist in significant numbers in the
national economy that Plaintiff can perform, including counter clerk, bench assembler, and
laundry sorter. Tr. 32. As a result, the ALJ concluded Plaintiff has not been disabled from
September 14, 2011, through the date of his decision. *Id.*

## DISCUSSION

I.      Consideration of New Evidence

Plaintiff argues the ALJ failed to develop the record fully and ignored evidence
establishing that the record was inadequate to allow for proper evaluation. Specifically, Plaintiff
argues that the ALJ made no inquiry into medical records related to PTSD, depression and panic
attacks from Linn County Mental Health ("LCMH") despite references to receiving treatment at
LCMH appearing within the record. Plaintiff further contends that her testimony, as well as
records from LCMH, first considered by the Appeals Council, suggest the likelihood that her
mental impairments are more limiting than documented within the records relied upon by the
ALJ.

The ALJ is not a mere umpire, but has an independent duty to fully and fairly develop the
record. *Higbee v. Sullivan*, 975 F.2d 558, 561-62 (9th Cir. 1992); *Celaya v. Halter*, 332 F.3d
1177, 1183 (9th Cir. 2003). This duty ensures that the plaintiff's interests are considered, even in
the absence of legal representation. *Tonapetyan v. Halter*, 242 F.3d 114, 1150 (9th Cir. 2001).

9 – FINDINGS AND RECOMMENDATION

However, the ALJ's duty to develop the record is triggered "only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2001). The ALJ may discharge his or her duty to fully and fairly develop the record by "subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." *Tonapetyan*, 242 F.3d at 1150. While it remains the plaintiff's burden to prove the existence of an impairment, *Macri v. Chater*, 93 F.3d 540, 543-45 (9th Cir. 1996); *see also* 42 U.S.C. § 423(d)(5), it is an ALJ's duty to resolve ambiguities within the record and to "conduct an appropriate inquiry" where the record lacks sufficient evidence. *Tonapetyan*, 242 F.3d at 1150 (quoting *Smolen*, 80 F.3d at 1288).

Plaintiff argues that the evidence the ALJ considered is inadequate to allow for proper evaluation of the limiting effects of her PTSD, anxiety, and panic attacks. Plaintiff further argues that, despite numerous references to Plaintiff's treatment for said conditions at LCMH, (Tr. 545, 601, 603, 607, 612) the ALJ made no inquiry into those records and made no effort to solicit adequate testimony with regard to her mental impairments. Tr. 54-55. The Court agrees that the ambiguous evidence before the ALJ, including the lack of treatment records from LCMH supporting Plaintiff's mental impairments, triggered the ALJ's duty to more fully develop the record and obtain additional evidence. Indeed, the ambiguity in the record is evident wherein the ALJ stated that there was "scant reference to debilitating panic attacks in the record". Tr. 29. The ALJ should have obtained or attempted to obtain records from LCMH to better inform his opinion of the severity of Plaintiff's mental impairments. Thus, the ALJ erred in failing to develop the record fully.

However, "harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 115 (9th Cir. 2012) (internal citations omitted). In the present case, the Court finds that the ALJ's error to fully develop the record was harmless. The records submitted to the Appeals Council fail to identify any additional functional limitations and do not contain contradictory medical evidence that necessarily conflicts with the records already credited by the ALJ. Following *Brewes v. Commissioner of Social Security Administration*, 682 F.3d 1157, 1159-60 (9th Cir. 2012), once Plaintiff supplied additional records to the Appeals Council, those records became part of the administrative record. Accordingly, this Court is required to consider that evidence "in determining whether the ALJ's decision is supported by substantial evidence." *Id.* at 1160.

The ALJ concluded that there is "scant reference to debilitating panic attacks in the record, and given that they're well controlled with medication, this does not further restrict her mental residual functional capacity" and factored this into his credibility analysis. Tr. 29. Plaintiff argues that the absent records, Tr. 637, 640, 644, 646, evidence ongoing, severe panic attacks, depression, and a mental disorder diagnosis of PTSD that are not controlled by medication, and their absence resulted in an incomplete treatment record. However, "[i]mpairments that can be controlled effectively with medication [and treatment] are not disabling." *Warre ex rel. E.T. IV v. Comm'r of the Soc. Sec. Admin.,* 439 F.3d 1001, 1006 (9th Cir. 2006). The absent records do not contradict any of the evidence relied upon by the ALJ when assessing the severity of Plaintiff's impairments.

Plaintiff's statements to her treatment providers at LCMH are consistent with Plaintiff's hearing testimony that she experienced panic attacks; however, those panic attacks are well controlled with medications including Dilaudid, Lorazepam, and Fluoxetine. Tr. 29, 54, 636,

637, 640, 642, 646. Indeed, the new records show that Dr. Smolen, a psychiatrist at LCMH, noted Plaintiff's nighttime panic attacks completely stopped while taking Fluoxetine. Tr. 636-37. Dr. Smolen also continued Plaintiff on Lorazepam, a medication that Plaintiff and Dr. Latta, Plaintiff's Primary Care Physician at Geary Street Family Medicine, found effective in controlling Plaintiff's daytime panic attacks. Tr. 54, 605, 636.

During her January 8, 2013, session with LCSW Charry Hartman, Plaintiff reported being "down" and that she had not gotten much rest due to caring for her sick sister. Tr. 646. Also during this session, Plaintiff reported that she had been having panic attacks, and had one such attack during her session. After being guided in "deep belly breathing," a form of clinical behavioral therapy, her panic attack was under control. During this visit, Plaintiff remarked that "she felt better every time [she] c[a]me" there. Tr. 646.

During her February 13, 2013, visit with her psychiatrist, Dr. Gale Smolen, Plaintiff reported having panic attacks at night, one to two times per week.  Tr. 644. Dr. Smolen suggested several medications to Plaintiff for panic attacks, including Prazosin for nightmares, as well as increasing the dosage of her Zoloft. Tr. 644. However, Plaintiff refused, and instead requested Klonopin or Lorazepam, despite being cautioned by Dr. Smolen that those medications were potentially addictive. *Id.* Nonetheless, Dr. Smolen prescribed Lorazepam, restricting Plaintiff to no more than two a day PRN[3] for panic. Plaintiff's refusal of Dr. Smolen's prescribed course of treatment to treat her depression calls Plaintiff's credibility into serious question. *Eckberg v. Colvin*, 594 Fed. Appx. 390, 391 (9th Cir. 2015). While not determinative, seeking addictive medication over safer options impugns Plaintiff's credibility. *See Edlund*, 253 F.3d at 1157 (suggesting that drug-seeking behavior undermines a claimant's credibility).

---

[3] Abbreviation meaning "when necessary" (from the Latin "pro re nata", for an occasion that has arisen, as circumstances require, as needed). http://www.medicinenet.com/script/main/art.asp?articlekey=8309

During Plaintiff's follow-up visit on July 5, 2013, Dr. Smolen continued Plaintiff on Lorazepam, making no changes to her dosage. Tr. 640. At Plaintiff's next follow-up with Dr. Smolen on October 25, 2013, Plaintiff reported having panic attacks once every two to three days. Plaintiff also reported a severe panic attack that she sought treatment for in the ER and was given "three nitros which didn't help and Dilaudid which finally worked." Tr. 637. Plaintiff also stated that "if she remembers to take her medication (Lorazepam), she sleeps well. If not, she has trouble." Tr. 637, 642. Dr. Smolen continued her on Lorazepam and noted that she considers Plaintiff's "treatment to be appropriate." Tr. 637.

Plaintiff was sexually abused when she was 15 years old, and Dr. Smolen opined that Plaintiff's panic attacks and PTSD stem from this traumatic event. Tr. 28, 30, 511, 643,644, 666. The ALJ credited PTSD as one of Plaintiff's four severe impairments. Tr. 25. The ALJ need not discuss all evidence presented. *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). Dr. Smolen found that Plaintiff has suffered from depression since the time of her abuse; the new records do not contradict Dr. Latta's assessment that Plaintiff's depression can be controlled with medication, which was credited by the ALJ. Tr. 29, 511, 549, 603, 640. Notably, however, Plaintiff was able to maintain substantial gainful employment during the years following her abuse until her alleged disability onset date. Tr. 148-66.

The new records supplied by Plaintiff from LCMH contain no evidence that Plaintiff's limitations were more severe than already articulated by the ALJ. Even if the ALJ had developed the record more fully, the inclusion of the new records from LCMH would not have changed the ALJ's decision. Because the new evidence does not contradict the ALJ's evaluation of the record as a whole, any error was harmless. *Ludwig v. Astrue*, 681 F.3d 1047, 1054-55 (9th Cir.

2012).Thus, the ALJ's interpretation was rational and based on substantial evidence. Plaintiff's alternative interpretation is insufficient to disturb the ALJ's findings. *Batson*, 359 F.3d at 1198.

II.    Plaintiff's Symptom Allegations

When evaluating the credibility of a plaintiff's testimony regarding the severity and limited effect of the plaintiff's symptoms, the ALJ must engage in a two-step analysis. *Lingenfelter*, 504 F.3d at 1035-36. "First, the ALJ must determine whether the [plaintiff] has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 1036 (internal citations and quotation marks omitted); 20 C.F.R. §§ 404.1529, 416.929. The plaintiff is not required to show that her impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* (quoting *Smolen*, 80 F.3d at 1282). If the plaintiff meets the first test and there is no evidence of malingering, the ALJ can reject the plaintiff's testimony about the severity of the symptoms only if she gives "specific, clear and convincing reasons" for the rejection. *Id.* To support a lack of credibility finding, the ALJ is required to "point to specific facts in the record which demonstrate that [the plaintiff] is in less pain than she claims." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

Plaintiff assigns error in the adequacy of the ALJ's rejection of her testimony by arguing the ALJ failed to provide specific, clear and convincing reasons for rejecting Plaintiff's characterization of the intensity, persistence, and limiting effects of her symptoms. Tr. 28. Plaintiff argues that the ALJ pointed to minor inconsistencies between the record and her testimony regarding her pain control and volunteer history at Helping Hands homeless shelter, Plaintiff asserts that those inconsistencies do not rise to the level of "clear and convincing" and

do not provide a basis upon which he may discredit her. Plaintiff cites office visits with Dr. Latta on January 17, 2011, September 13, 2011, and February 14, 2013, as evidence that her pain was inadequately controlled.

During her September 13, 2011, visit with Dr. Latta, Plaintiff was seen for ongoing right upper quadrant ("RUQ") pain and bilateral hip pain. Tr. 484. Dr. Latta noted that Plaintiff's hip pain improved with cortisone injections. Tr. 484. Furthermore, Dr. Latta confirmed the RUQ pain Plaintiff experienced was due to gallbladder disease, which was confirmed when she later had her gallbladder surgically removed via cholecystectomy on October 10, 2011, resolving her RUQ pain. Tr. 435-36, 573.

During her January 17, 2013, visit with Dr. Latta, Plaintiff was seen for a routine follow-up exam. Tr. 607, 610. Plaintiff stated that she had been finishing her pain medication faster because the weather made her pain worse. Tr. 607. Dr. Latta performed an 18 point tenderness analysis, a diagnostic tool used to assess fibromyalgia. Tr. 609. Plaintiff exhibited 18 of 18 tender points. *Id.* Dr. Latta diagnosed Plaintiff with fibromyalgia, noting that "[i]f we do proceed with [a] diagnosis of fibromyalgia, I would like to wean her off of opioids altogether." Tr. 609-10. Accordingly, Dr. Latta prescribed Plaintiff Tramadol in lieu of Percocet for her pain. Tr. 609. Thus, the January 17 record indicates Plaintiff was experiencing a period of poor pain control. Tr. 610. However, the ALJ determined Plaintiff experienced good pain control *overall*. Tr. 28. If the ALJ's interpretation of the evidence is rational, it is immaterial that the evidence may be "susceptible [of] more than one rational interpretation." *Magallanes*, 881 F.2d at 750, citing *Gallant*, 753 F.2d at 1453. Although Plaintiff argues for a different reading of the record, the ALJ's interpretation of the evidence was rational.

During her February 14, 2013, visit with Dr. Latta, Plaintiff was seen on a follow-up basis for chronic pain syndrome, depression, and anxiety. Tr. 603. Impairments that can be controlled effectively with medication [and treatment] are not disabling. *Warre ex rel. E.T. IV.,* 439 F.3d at 1006 (9th Cir. 2006). During this visit, Plaintiff reported that Tramadol was ineffective in controlling her pain and requested to be put back on Percocet. Tr. 603. Dr. Latta stressed that fibromyalgia treatment typically does not include the use of narcotic medications due to their exacerbative effect on fibromyalgia symptoms, but agreed to prescribe Percocet nonetheless. Tr. 605.

Plaintiff argues that the ALJ's consideration of the inconsistencies between her testimony and evidence regarding the timeline of her volunteer history at the shelter in his credibility analysis is "inappropriate given that there is no evidence suggesting her volunteer work contradicted her allegations of disability." At the time of Plaintiff's hearing, an ALJ considered "[a] plaintiff's reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record[.]" *Light v. Soc. Sec. Admin.,* 119 F.3d 789, 792 (9th Cir. 1997), as amended on *reh'g* (Sept. 17, 1997); *citing Smolen,* 80 F.3d at 1284; S.S.R 88–13. Consequently, inconsistencies between Plaintiff's testimony and evidence would have been relevant to the ALJ's credibility analysis and ultimate disability determination. *Id.* However, the SSA no longer assesses the "credibility" of an applicant's statements, but instead focuses on determining the "intensity and persistence of [the applicant's] symptoms." Social Security Ruling 16-3p, 2016 SSR LEXIS 4; "Titles II and XVI: Evaluation of Symptoms in Disability Claims," 81 Fed. Reg. 14166, 14167 (effective March 28, 2016).

In addition to the inconsistencies between Plaintiff's testimony regarding her volunteer history and the record, the ALJ cited many other inconsistencies between Plaintiff's statements and evidence in support of his credibility determination, which are as follows:

The ALJ discredited Plaintiff's claims that she is unable to do most physical activities, which includes walking, sitting for more than 10 minutes, standing, and lifting more than 10 pounds. Tr. 28-29. The record shows that Plaintiff is able to shop for herself, walking to and from a grocery store located a block away from her home. Tr. 28. Additionally, Plaintiff utilized a treadmill to lose weight, and in 2012, tolerated the use of an elliptical machine for light exercise. Tr. 29. Furthermore, despite Plaintiff's symptom testimony that her pain would prevent her from sitting for more than 10 minutes at a time, Plaintiff remained seated for the entirety of her thirty-minute hearing as well as the preceding hour-long commute to the hearing location. Tr. 28.

The ALJ similarly discredited Plaintiff's claims that she has frequent, ongoing pain symptoms that are not controlled by medication. *Id.* Although Plaintiff claims that pain medication is of little help, the ALJ noted that the record shows that Plaintiff reports good pain control overall and has been on narcotics for many years. *Id.* Plaintiff stated that she stopped working in 2006 due to knee pain, yet despite this pain and her statements that it prevents her from being able to work, she has continued to look for and accepted work (though these work attempts were deemed unsuccessful) and continued her job search, though fruitlessly. *Id.*

The ALJ discredited Plaintiff's claims that her panic attacks and anxiety preclude normal functioning because the record shows that her panic attacks and anxiety are well controlled with medication. Tr. 29. This conclusion was supported by statements made by Plaintiff during the hearing in which she stated that her attacks last only until she takes her medication, which calms

17 – FINDINGS AND RECOMMENDATION

her right down. *Id.* Indeed, as of her February 14, 2013, visit with Dr. Latta, Plaintiff reported no anxiety and Dr. Latta noted that Lorazepam was "[v]ery effective for helping her sleep, which is her most significant mental health symptom." Tr. 603.

Finally, the ALJ discredited Plaintiff's claims that she had not performed volunteer work at Helping Hands, her former residence, for at least two years. During her March 9, 2012, visit with Dr. Smolen, Plaintiff stated that she was actively volunteering at the shelter. Tr. 28, 510. The ALJ noted that, even if Plaintiff had quit the day after her visit with Dr. Smolen, her volunteerism could have ceased no earlier than 21 months prior – not "at least two years ago" as Plaintiff indicated in her testimony. Tr. 28.

Plaintiff argues that the ALJ's attack on this statement does not undermine Plaintiff's symptom testimony of her disability. During a July 12, 2012 screening at LCMH, Plaintiff indicated that she was asked to leave Helping Hands as she was no longer able to do the chores they required of her. Tr. 664. However, the ALJ noted there was nothing in the medical evidence indicating that Plaintiff sustained any additional impairment or worsening in her condition that would have forced her to quit volunteering. Tr. 28.

The discrepancy between Plaintiff's testimony and evidence of Plaintiff's volunteer history is one of many specific, clear and convincing reasons the ALJ provided for rejecting Plaintiff's testimony. Even if not all of the ALJ's rationales are clear and convincing, the ALJ provided sufficient clear and convincing rationales to uphold the finding. *Batson*, 359 F.3d at 1198.

For the foregoing reasons, the ALJ did not err in discounting Plaintiff's credibility. The ALJ's interpretation was rational and based on substantial evidence. Plaintiff's alternative interpretation is insufficient to disturb the ALJ's findings. *Id.*

III.    Failure to Consider Depression and Fibromyalgia as Severe Impairments

Plaintiff argues the ALJ erred in failing to find depression and fibromyalgia "severe" impairments at step two of the sequential analysis. Tr. 26, 29. Plaintiff contends the ALJ's failure to consider her depression and fibromyalgia at step two resulted in a flawed and incomplete RFC determination. Plaintiff also argues the ALJ disregarded objective medical evidence supporting Plaintiff's fibromyalgia diagnosis and provided no support for his assertion that fibromyalgia would be accommodated by the RFC as stated. The step-two inquiry is merely a *de minimis* screening device to dispose of groundless claims. *Smolen*, 80 F.3d at 1290 (citing *Bowen*, 482 U.S. at 137, 153-154).

As a preliminary matter, the Ninth Circuit has held that failure to list an impairment at step two is harmless error and does not require reversal where the step is nevertheless resolved in the Plaintiff's favor due to the presence of other severe impairments. *Burch v. Barnhart*. 400 F.3d 676, 682 (9th Cir. 2005); *see Bostic v. Astrue*, 2012 WL 786828, \*14 (D. Or. Feb. 8), *adopted as modified* by 2012 WL 786909 (D. Or. Mar. 9, 2012) (ALJ did not err at step two in determining that the plaintiff's depression, learning disorder, anxiety, and anorexia were non-severe because he found other mental impairments to be severe, *citing Gray v. Comm'r*, 365 Fed. Appx. 60, 61 (9th Cir. 2010)); and *Mondragon v. Astrue*, 364 Fed. Appx. 346, 348 (9th Cir. 2010). *Hickman v. Comm'r*, 399 Fed. Appx. 300, 302 (9th Cir. 2010) ("Any error in the ALJ's failure to include a reading disorder as one of Hickman's severe impairments at step two of the analysis is harmless. The ALJ found Hickman suffered from other severe impairments and, thus, step two was already resolved in Hickman's favor.").

Here, step two was resolved in Plaintiff's favor. Tr. 25. The ALJ determined Plaintiff had severe impairments including obesity, degenerative joint disease/osteoarthritis of the knees, post-traumatic stress disorder, and right rotator cuff syndrome. *Id.*

A.  Depression

Plaintiff contends that, while similar to PTSD in symptomology, depression is a distinct disorder and although the ALJ acknowledged that Plaintiff had been assessed with depression, Plaintiff maintains that depression should have been considered separately in the ALJ's analysis at step two. The ALJ expressly considered Plaintiff's depression diagnosis when assessing limitations caused by Plaintiff's mental impairments. Tr. 29. The ALJ acknowledged that Plaintiff was assessed with depression and noted that her mood was well controlled with medication (Cymbalta). *Id.* The ALJ also noted Plaintiff's subsequent voluntary discontinuance of her use of Cymbalta. *Id.* Because Plaintiff's depression was responsive to treatment, finding this impairment to be non-severe was appropriate. *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1992) (upholding ALJ's finding of no disability where the impairments were stabilized).

When evaluating the severity of an affective disorder, such as depression, an ALJ must consider all criteria outlined in 20 C.F.R. Part 404, Subpart P, Appendix 1, 12.04. Under this section, a depressive disorder is considered severe when (1) there is a medically documented persistence, either continuous or intermittent, of one or more specified symptoms that (2) results in at least two of the following "Paragraph B" criteria: (i) marked restriction of activities of daily living; (ii) marked difficulties in maintaining social function; (iii) marked difficulties in maintaining concentration, persistence, or pace or (iv) repeated episodes of decompensation, each of extended duration.

The ALJ found that Plaintiff had only a mild restriction in activities of daily living; a mild limitation in social functioning; a moderate limitation in concentration, persistence or pace; and no extended episodes of decompensation. Tr. 26-27. The ALJ's RFC determination is inclusive of the ALJ's assessment of the degree of limitation caused by Plaintiff's mental impairments and stated that this would limit Plaintiff to light work comprised of simple, routine, repetitive tasks. Tr. 27. Furthermore, neither the records available to the ALJ nor the new evidence provided to the Appeals Council demonstrate Plaintiff experienced any functional limitations greater than that already considered by the ALJ that would have impacted his analysis.

For the reasons set forth above, the court concludes that the ALJ's determination that Plaintiff's depression was not a severe medically determinable impairment at step two is supported by substantial evidence.

B.  Fibromyalgia

Plaintiff alleges that the ALJ disregarded Dr. Latta's comments from Plaintiff's date of diagnosis which stated that a diagnosis of fibromyalgia made sense in consideration of Plaintiff's history of sexual abuse, methamphetamine use in the past, her long-term struggle with IBS, as well as a constellation of symptoms. Tr. 609. Plaintiff also alleges that the ALJ ignored Dr. Latta's observation of 18 of 18 tender points on examination consistent with fibromyalgia. *Id*

The ALJ expressly considered Plaintiff's fibromyalgia diagnosis when determining Plaintiff's RFC. Tr. 26. The ALJ acknowledged Plaintiff's fibromyalgia diagnosis, stating that the diagnosis was made after Plaintiff relayed her families concern that she might suffer from the disease to Dr. Latta. *Id.* The ALJ continued, stating that the RFC would accommodate fibromyalgia even if it were to be considered a severe impairment. Tr. 26. Plaintiff argues that, in

making this statement, the ALJ implied that Plaintiff persuaded Dr. Latta into making a fibromyalgia diagnosis. The court rejects this argument. The ALJ's statements are a chronology of events and we do not impute any negative treatment by the ALJ of Plaintiff's fibromyalgia diagnosis to this remark.

Plaintiff's argument does not represent the full effect of Dr. Latta's comments to this court. In addition to the above, Dr. Latta also stated that Plaintiff's treatment regimen "would not change much" aside from making a concerted effort to wean Plaintiff off of opioids due to their exacerbative effect on fibromyalgia pain. Tr. 609. Dr. Latta then switched Plaintiff from Percocet to Tramadol, a non-opioid pain reliever. Tr. 610. This seems to suggest that Dr. Latta felt Plaintiff's treatment for her pain was adequate except for necessitating a minor medication adjustment in light of her diagnosis. Plaintiff later requested that she be switched back to Percocet from Tramadol for pain because Percocet controlled her pain more effectively. Tr. 603.

Plaintiff argues that the ALJ provided no basis for his assertion that his RFC determination would accommodate fibromyalgia. However, the ALJ is not required to discuss every piece of evidence. *Howard,* 341 F.3d at 1012 (in interpreting the evidence and developing the record, the ALJ need not discuss every piece of evidence). Plaintiff argues that the ALJ ignored objective medical evidence regarding her fibromyalgia diagnosis. However, Plaintiff makes no showing that the ALJ erroneously disregarded any evidence that her fibromyalgia resulted in greater functional limitation than the ALJ assessed. The records upon which Plaintiff relies show only that a diagnosis was made and do not speak to limitations beyond those already credited by the ALJ. The ALJ expressly contemplated fibromyalgia stating that, even if it were to be found severe, the RFC would still accommodate this impairment. Tr. 26. For this and the foregoing reasons, any error in failing to include fibromyalgia as a severe impairment is

harmless. *See Lewis v. Astrue*, 498 F. 3d 909, 911 (9th Cir. 2007) (holding that when an ALK accounts for resulting limitations later in the sequential evaluation process, any error in finding the impairment non-severe at Step Two is harmless).

Accordingly, the Court finds that the ALJ did not commit reversible error.

IV.    Commissioner's Burden at Step Five

At step five, an ALJ must propose a hypothetical based on medical assumptions supported by substantial evidence reflecting the plaintiff's limitations. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). However, an ALJ may omit any alleged limitations that the ALJ has found to be not credible from the vocational hypothetical promulgated to the VE. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *see also Magallanes*, 881 F.2d at 756-57 (holding that it is proper for an ALJ to limit a hypothetical to restrictions supported by substantial evidence in the record).

Here, the VE opined that a person of the same age, education, experience and RFC as Plaintiff could perform at least three jobs: counter clerk, bench assembler, and laundry sorter. Tr. 57-58. Plaintiff contends that the ALJ's RFC determination was in error because the ALJ did not perform a function-by-function analysis pursuant to S.S.R. 96-8p, which resulted in a flawed vocational hypothetical being given to the VE. She further maintains that the ALJ's failure to explicitly address her alleged five-pound lifting restriction, the option to change positions at will, and the severity of her mental impairments within the vocational hypothetical was in error. Tr. 51.

We must affirm the ALJ's determination of Plaintiff's RFC if the ALJ applied the proper legal standard and his decision is supported by substantial evidence. *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). In making his RFC determination, the ALJ

properly took into account limitations that were supported by substantial evidence in the record. Tr. 31-32. A function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary. *See* S.S.R 96-8p; *Bayliss*, 427 F.3d at 1218.

The hypothetical that the ALJ posed to the VE contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record. Therefore, the ALJ may properly rely on testimony the VE gave in response to the vocational hypothetical. *See Magallanes*, 881 F.2d at 756-57 (holding that it is proper for an ALJ to limit a hypothetical to restrictions supported by substantial evidence in the record). A VE's recognized expertise provides the necessary foundation for his or her testimony. *Bayliss,* 427 F.3d at 1218. Thus, no additional foundation is required.

The ALJ did not commit harmful error in the RFC formulation or hypothetical questions to the VE. Accordingly, the jobs identified by the ALJ were also valid.

## **CONCLUSION**

Because the Commissioner's decision is based on proper legal standards and supported by substantial evidence, the Commissioner's final decision should be AFFIRMED and this case should be DISMISSED.

## **SCHEDULING ORDER**

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, the Findings and Recommendation will go under advisement on that date.

If objections are filed, a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

## NOTICE

A party's failure to timely file objections to any of these findings will be considered a waiver of that party's right to *de novo* consideration of the factual issues addressed herein and will constitute a waiver of the party's right to review of the findings of fact in any order or judgment entered by a district judge. These Findings and Recommendation are not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment.

DATED this 18th day of August 2016.

Paul Papak

Honorable Paul J. Papak
United States Magistrate Judge

25 – FINDINGS AND RECOMMENDATION